UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| KWAME AMO BOATENG, | : | CIVIL ACTION NO. 3:CV-16-1925 |
|---|---|---|
| Petitioner | : | (Judge Nealon) |
| v. | : | |
| LORETTA E. LYNCH, et al., | : | |
| Respondents | : | |

**MEMORANDUM**

Petitioner, Kwame Amo Boateng, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed the instant counseled petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. He challenges his continued detention by ICE. (Doc. 1, petition). A response (Doc. 4) and traverse (Doc. 6) having been filed, the petition is ripe for review. For the reasons set forth below, the petition will be denied without prejudice.

**I. Background**

On November 10, 2006, Petitioner, a native and citizen of Ghana, entered the United States in Philadelphia, Pennsylvania, as a Lawful Permanent Resident with an "IR2" status (which means, child of a U.S. citizen). (Doc. 7-2 at 3-6, Record of Deportable/Inadmissible Alien).

On November 28, 2012, Boateng was arrested by the Newberry Township Police Department in York, Pennsylvania for "unlawful use of a computer and other

computer crimes, identity theft, access device fraud, theft by unlawful taking and receiving stolen property." Id. On May 1, 2014, Boateng "entered a plea of guilty and was convicted for receiving stolen property;" however, "all other charges were dismissed." Id. Boateng was sentenced to three-hundred sixty-four (364) days in prison. Id.

On December 1, 2012, Boateng was arrested again by the Newberry Township Police Department for "unlawful use of a computer and other computer crimes, identity theft, access device fraud, theft by unlawful taking and receiving stolen property." Id. On May 1, 2014, Boateng "entered a plea of guilty and was convicted for receiving stolen property;" however, "all other charges were dismissed." Id. For this crime, Boateng also received a sentence of three-hundred sixty-four (364) days in prison. Id. The crimes which Boateng committed on November 28, 2012 and December 1, 2012 "did not arise out of a single scheme of criminal misconduct." (Doc. 7-2 at 7-9, Notice to Appear).

Boateng was encountered on March 24, 2015 "while conducting routine CAP [Criminal Alien Program] operations at the York County Prison." (Doc. 7-2 at 3-6, Record of Deportable/Inadmissible Alien).

On or about August 15, 2015, Boateng was taken into ICE custody. (Doc. 7-2 at 10, Declaration of David Stein, Deportation Officer).

2

On August 17, 2015, immigration officials issued a Notice to Appear charging Boateng to be removable from the United States pursuant to Sections 237(a)(2)(A)(ii) of the Immigration and Nationality Act because Boateng had been "convicted of two crimes involving moral turpitude" that did not arise out of a "single scheme of criminal misconduct." (Doc. 7-2 at 7-9, Notice to Appear).

On January 14, 2016, an immigration judge ordered Boateng to be removed from the United States to Ghana. (Doc. 7-2 at 12, Order of the Immigration Judge). Boateng waived his right to appeal that decision. Id.

On January 22, 2016, a travel document request was uploaded into eTD[1] and sent to the Ghanaian consulate in New York City. (Doc. 7-2 at 10, Declaration of David Stein, Deportation Officer at ¶ 4.2).

On January 27, 2016, the Ghanaian consulate responded stating: 1) Boateng is on the list for the next round of interviews; 2) the consulate only conducts interviews on the last Friday of the month; and 3) the next date for interviews had not yet been set. Id. at ¶ 5.

On February 12, 2016, Headquarters (HQ) reported that the consulate is still

---

[1] U.S. Immigration and Customs Enforcement (ICE) owns and operates an electronic Travel Document (eTD) System, which provides an efficient means for ICE personnel to request, and foreign consular officials to review and adjudicate, travel document requests for aliens who have been ordered removed or granted voluntary departure from the United States, but do not possess valid travel documents.

working on the interviews.  Id.  ICE contacted the Ghanaian consulate four times inquiring about the issuance of a travel document for Boateng between March 8, 2016, and March 26, 2016.  Id. at ¶ 7.  No one at the Ghanaian consulate answered any of these calls between March 8, 2016, and March 26, 2016; therefore, a message was left each time a call was made.  Id.

On March 28, 2016, the local Office of Enforcement and Removal Operations (ERO) spoke with Headquarters and was advised that Headquarters personnel had been in discussion with the Embassy regarding the backlog of cases. Id. at ¶ 8.

On March 28, 2016, ERO was notified that all further travel document requests should be sent directly to Headquarters, until further notice, because Headquarters is working with the Embassy to schedule interviews until the back log was caught up.  Id.  Headquarters intends to schedule approximately 10 interviews per week until the backlog is cleared. Id.

On or about April 8, 2016, ERO conducted a ninety (90) day post-order custody review on Boateng.  (Doc. 7-2 at 13, Decision to Continue Detention dated April 8, 2016).  Boateng received a letter dated April 8, 2016, from ERO notifying him of its decision to continue his detention.  Id.  This letter also notified Boateng that ICE is currently working to effect his removal from the United States and that a travel document is expected to be obtained in the foreseeable future.  Id.

On April 15, 2016, Boateng was interviewed by the Ghanaian consulate. (Doc. 7-2 at 10, Declaration of David Stein, Deportation Officer at ¶ 10). Between April 21, 2016, and June 16, 2016, local ERO contact Headquarters twelve (12) times to inquire as to the status of the travel document for Boateng. Id. at ¶ 11.

On June 28, 2016, Headquarters contacted ERO and informed them that the consulate agreed to issue ten (10) travel documents, but Boateng was not of the ten (10) travel documents. (Doc. 7-2 at 10, Declaration of David Stein, Deportation Officer at ¶ 12). Headquarters informed ERO that it would continue to pursue travel documents for all others, including Boateng. Id.

Around 180 days of detention, and on or about July 19, 2016, a second review was completed and Boateng received a letter regarding the results of that review. (Doc. 7-2 at 15, Decision to Continue Detention dated July 19, 2016). Boateng was notified that "ICE is currently working with the Government of Ghana to secure a travel document" and said travel document is expected; therefore, the decision was made to continue Boateng's detention. Id.

On July 29, 2016, ERO spoke with the consulate, and Consular Officer Appiah stated that she would arrange to have Boateng interviewed again. (Doc. 7-2 at 10, Declaration of David Stein, Deportation Officer at ¶ 14). On August 9, 2016, Boateng was interviewed again by the Ghanaian consulate. Id. at ¶ 15.

Between August 16, 2016 and September 29, 2016, local ERO contacted Headquarters and also called the consulate six (6) times, but did not receive any update on the travel document issuance for Boateng. Id. at ¶ 16.

On October 4, 2016, ERO was contacted by Consular Officer Appiah who reported that the travel document issuance for Boateng is pending before the Consul General. Id. at ¶ 17.

A 270-day post order custody review was conducted, has been submitted to Headquarters, and was still pending as of October 24, 2016. Id. at ¶ 18.

On September 21, 2016, Petitioner filed the instant petition for writ of habeas corpus, seeking an order of immediate release "because there is no significant likelihood of removal in the reasonably foreseeable future, and because none of the special circumstances exist here to justify petitioner's continued detention." (Doc. 1, petition).

**II. Discussion**

Detention section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, for having been convicted of an aggravated felony; and (2) section 237(a)(2)(B)(i) of the Act, as amended, for a controlled substances conviction "other than a single offense involving possession for one's own use of 30 grams or less of marijuana., release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. §1231. Under §1231(a), the Attorney General has ninety (90) days to remove

an alien from the United States after his order of removal, during which time detention is mandatory. Section 1231(a)(1)(B) provides the following:

> The removal period begins to run on the latest of the following:
>
> > (i) The date the order of removal becomes administratively final.
> >
> > (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
> >
> > (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. §1231. At the conclusion of the ninety-day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§ 1231(a)(3) & (6). In Zadvydas v. Davis, 533 U.S. 678, 689 (2001), the Supreme Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Id. at 699. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention."

Following Zadvydas, regulations were promulgated to meet the criteria established by the Supreme Court. See 8 C.F.R. §241.4. Prior to the expiration of the

7

mandatory ninety-day removal period, the district director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. §241.4(k)(1)(I). When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the Headquarters Custody Management Unit for further custody review. 8 C.F.R. §241.4(k)(1)(ii). Once jurisdiction is transferred, an eligible alien may submit a written request for release asserting the basis for the alien's belief that there is no significant likelihood that he will be removed in the reasonably foreseeable future. 8 C.F.R. §241.13(d)(1). Petitioner's custody was reviewed by the Headquarters Custody Management Unit on April 8, 2016 (90-day hearing), July 19, 2016 (180-day hearing), and his 270-day hearing was pending as of October 24, 2016.

Petitioner's order of removal became final on February 14, 2016, and the six-month presumptively reasonable period of post-removal-period detention expired on or about August 14, 2016. However, the Zadvydas Court emphasized that "[t]his 6–month presumption [ ] does not mean that every alien not removed must be released after six months." Zadvydas, 533 U.S. at 701. Rather, the Supreme Court explained that, to state a claim for habeas relief under §2241, an alien must provide in the petition good reason to believe that his or her removal is not foreseeable. Id. If at the conclusion of the six-month period the alien provides good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." Id., at 701. In the absence of factual allegations supporting the conclusion that removal is not reasonably foreseeable, ICE does not have to respond by showing that removal is reasonably foreseeable. Id.; see also Barenboy v. Attorney General of U.S., 160 F. App'x 258, 261 n. 2 (3d Cir. 2005) ("Once the six-month period has passed, the burden is on the alien to provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Only then does the burden shift to the Government, which must respond with evidence sufficient to rebut that showing") (citation and internal quotation marks omitted).

Despite stating in his traverse that he "believes that there is no significant likelihood of his removal in the reasonably foreseeable future", (See Doc. 8), Petitioner offers no evidence indicating that his removal will not occur in the reasonably foreseeable future. Nor does he offer anything in response to ICE's statement that a travel document from the Government of Ghana is expected.

Such conclusory statements are not evidence of a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner "has made no showing whatsoever that there is 'no significant likelihood of removal in the reasonably foreseeable future'." Encamacion–Mendez v. Attorney General of U.S.,

176 F. App'x 251, 254 (3d Cir. 2006), and he has not otherwise shown that his detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3); see, e.g., Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005) (finding that "[u]nder Zadvydas, a petitioner must provide 'good reason' to believe there is no likelihood of removal, 533 U.S. at 701, and Alva has failed to make that showing here."); Abdelrahman v. BICE's Interim Field Office Director, Civil No. 05-cv-1916, 2005 WL 3320841, at *2 (M.D. Pa. Dec. 7, 2005)(Muir, J.) (noting that "the fundamental basis of [the petitioner's] argument appear[ed] to be that his removal [was] unlikely simply because it [had] not occurred to this point."); Soberanes v. Comfort, 388 F.3d 1305 (10th Cir. 2004) (affirming dismissal of §2241 petition challenging detention pursuant to §1231(a)(6) where petitioner failed to provide good reason to believe that there is no likelihood of removal); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002) (concluding that "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"). Because, at this time, continued detention remains reasonable, it is constitutionally permissible. The petition is therefore subject to dismissal.

However, ICE is cautioned that, although the current record does not

demonstrate that "there is no significant likelihood of removal in the reasonably foreseeable future," Zadvydas, 533 U.S. at 701, at some point in time, the inability of ICE to remove petitioner to Ghana may provide "good reason" to believe the removal is unlikely to be carried out. "For detention to remain reasonable, as the period for confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. The dismissal is therefore without prejudice to the filing of a new §2241 petition in the event that Petitioner can provide evidence of good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

### III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied without prejudice. A separate Order will be issued.

Dated: May 30, 2017  /s/ William J. Nealon
**United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| KWAME AMO BOATENG, | : | CIVIL ACTION NO. 3:CV-16-1925 |
| --- | --- | --- |
| Petitioner | : | (Judge Nealon) |
| v. | : | |
| LORETTA E. LYNCH, et al., Respondent | : | |

# ORDER

**AND NOW, THIS 30th DAY OF MAY, 2017**, for the reasons set forth in the Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus, (Doc. 1) is **DENIED** without prejudice to Petitioner filing another §2241 petition should he develop good reason to believe that removal is no longer reasonably foreseeable.

2. The Clerk of Court is directed to **CLOSE** this case.

/s/ William J. Nealon
**United States District Judge**